IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**FILED**

JUN 2 3 2008

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

BRUSIE "DON" LANHAM,

Petitioner,

v.                                                               Civil Action No. 2:07cv100
(Judge Maxwell)

DAVID BALLARD, Warden,

Respondent.

## OPINION/REPORT AND RECOMMENDATION

On November 30, 2007, the petitioner, through counsel, initiated this § 2254 habeas corpus petition in the Southern District of West Virginia. Because the petitioner's conviction and sentence were imposed by the Circuit Court of Ritchie County, West Virginia, the case was transferred to this Court on December 3, 2007. Upon receipt of the case, the undersigned conducted a preliminary review of the petition and determined that summary dismissal was not warranted at that time. Therefore, on December 7, 2007, the respondent was directed to file a response.

On January 25, 2008, the respondent filed a Motion for Summary Judgment with a Memorandum in Support. The petitioner filed a reply on February 25, 2008, and an additional exhibit on March 3, 2008. This case is before the undersigned for a Report and Recommendation on the respondent's motion.

### I. Procedural History

**A. Petitioner's Conviction and Sentence**

On June 7, 2004, a Ritchie County grand jury returned a three-count indictment charging the petitioner with First Degree Murder, Malicious Assault and Burglary. Resp't Ex. 1. On April 1, 2005, a jury found the petitioner guilty on all three counts. Resp't Ex. 11. On June 7, 2005,

pursuant to certain post trial motions, the trial court dismissed the petitioner's conviction of the burglary count. Resp't Ex. 12. The petitioner was eventually sentenced to life without parole on the murder charge, and one to five years for unlawful assault. Id.

**B. Direct Appeal**

On January 24, 2006, the petitioner filed a direct appeal of his conviction and sentence to the West Virginia Supreme Court of Appeals ("WVSCA"). In his appeal, the petitioner asserted the following assignments of error:

(1) The Court erred in denying the petitioner's motion to suppress and motion to dismiss his indictment filed on the grounds that potential exculpatory evidence was not preserved by the States of West Virginia and/or destroyed; and, that evidence of tests performed on evidence that was destroyed without being properly preserved or giving the defendant the opportunity to independently test the same.

(2) The Court erred by failing to allow the petitioner to conduct voir dire of prospective jurors.

3. The Court erred by denying the petitioner's various motions for a mistrial on the grounds that the special prosecuting attorney for Ritchie County, West Virginia made inappropriate remarks regrading the defendant in the presence of the jury.

4. The petitioner's conviction of felony-murder was unconstitutional on the grounds that the petitioner was not indicted for felony murder by the grand jury.

5. The Court erred in giving the jury an instruction on felony-murder which was fatally defective and insufficient.

6. The Court erred by improperly instructing the jury regarding the inference of malice.

On May 23, 2006, the WVSCA granted in part, the petitioner's petition, agreeing to review the petitioner's assignment of error one. However, relief was denied by the WVSCA by published opinion on November 30, 2006. See State v. Lanham, 219 W.Va. 710, 639 S.E.2d 802 (W.Va. 2006) (per curiam).

C. **Petitioner's State Habeas Petition**

The petitioner did not pursue any state post conviction collateral remedies.

D. **Petitioner's Federal Habeas Petition**

In his federal habeas petition, the petitioner asserts the following ground for relief:

(1) The Court erred in denying the appellant's motion to suppress and motion to dismiss his indictments filed on the grounds that potential exculpatory evidence was not preserved or evidence was destroyed without being properly preserved or giving the defendant the opportunity to independently test the same.

E. **Respondents' Contentions**

In his motion for summary judgment, the respondent asserts that the petition asserts claims that are not cognizable on federal habeas review. In addition, the respondent asserts that the petitioner has failed to state a claim upon which relief can be granted and that the petitioner has failed to demonstrate that he is entitled to relief on any of his claims. Therefore, the respondent seeks judgment as a matter of law on all claims.

## II. **Standards of Review**

A. **Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too has the Fourth

Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir 1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (1986).

## B. Federal Habeas Review Under 28 U.S.C. § 2254

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from

a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); see also Williams v. Taylor, 529 U.S. 362 (2000).

The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." Thomas v. Taylor, 170 F.3d 466, 475 (4th Cir. 1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. Bell v. Jarvis, 236 F.3d 149 (4th Cir.) cert. denied, 524 U.S. 830 (2001)(quoting Bacon v. Lee, 225 F.3d 470, 478 (4th Cir. 2000)). However, the court must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Id. at 158.

A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court

decides a case differently that this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. "An unreasonable application of federal law is different from an incorrect application of federal law." Id. at 410.

When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.'" 28 U.S. C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003).

However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); Richmond v. Polk, 375 F.3d 309 (4th Cir. 2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" Brecht, supra.

Here, the petitioner's claim was properly presented to the courts of the State. Because the petitioner's claim was adjudicated on the merits in State court, the State's findings of fact and conclusions of law are due the appropriate deference.

### III. Analysis

6

In the petition, the petitioner asserts only one ground for relief:

potential exculpatory evidence was not preserved by the State and/or that the evidence of the tests performed on evidence was destroyed without being properly preserved or giving the defendant the opportunity to independently test same.

According to federal law, the due process clause of the Fourteenth Amendment imposes a duty on the state to preserve evidence that "might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To meet this standard, "evidence must both possess an exculpatory value that was apparent before the evidence was destroyed and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. However, only the bad-faith destruction of evidence violates a defendant's constitutional rights. Arizona v. Youngblood, 488 U.S. 51, 58-59 (1988).

On direct appeal of this issue, the WVSCA found:

> The appellant argues that his conviction should be reversed because of the State's alleged destruction of potentially exculpatory evidence in his case. In that regard, he contends that as of May 30, 2004, the day Mr. Broadwater was killed, the trailer of Anna Moore became a crime scene which should have been preserved. He points out that the trailer had a significant amount of blood in different places; inside and out; patterns of blood splatters; bullet holes in the walls and doors; and other damage.
> According to the investigating officers, under the supervision of Trooper Stout, they collected evidence, took pictures, conducted a test of bullet trajectory, and gathered all of the information necessary to complete their investigation. The investigation was completed on June 2, 2004 and the trailer was returned to the Moore family.
> The appellant contends that on June 9, 2004, immediately after his counsel was retained, a letter was sent to the Prosecuting Attorney of Ritchie County requesting an opportunity to inspect the trailer and surrounding property. The appellant maintains that the

request was ignored. On June 24, 2004, and July 8, 2004, second and third letters were sent requesting to inspect the crime scene. Those requests also went without answer. In mid July, following a fourth letter to the prosecutor, the appellant's counsel was permitted to inspect the property. He explained, however, that by the time he was able to gain access to the crime scene, the Moore family had been living in the trailer or had access to it for approximately six weeks. Moreover, all of the blood on the floor and other parts of the trailer had been cleaned; the various blood splatters had been removed; the walls and other parts of the trailer that had bullet holes were repaired and covered up; the front door was destroyed; the glass in the front porch removed; and the other damage to the trailer was concealed, repaired or replaced. As a result, the appellant declares that none of the evidence left at the crime scene or the scene itself was preserved for independent testing by the defense.

    The appellant maintains that the State had a duty to preserve the crime scene evidence for review by the defense. He further declares that the State's failure to do so resulted in the evidence, exculpatory or otherwise, to be lost forever. Thus, he states that the mandates of this Court's prior decisions in State v. Thomas, 187 W.Va. 686, 421 S.E.2d 227 (1992), and State v. Osakalumi, 194 W.Va. 758, 461 S.E.2d 504 (1995), were clearly violated leaving the appellant without the ability to contest the testimony and other evidence presented at trial against him.

. . .

    In the case at hand, however, there was no scientific test that implicated the appellant. Moreover, the State did not rely on a missing piece of evidence, like the sample in Thomas, or the couch in Osakalumi, to convict the appellant. Instead, the State relied on eyewitness testimony that clearly indicated that the appellant was at the crime scene acting in a belligerent and threatening manner. The evidence also showed that the appellant approached the front door and began pounding on it. Although the evidence is somewhat vague on the precise order of what occurred next, it is clear that the appellant unlawfully gained entry into a house where he was not welcome, armed with a firearm, and with felonious intent. A gunfight thereafter ensued causing Buck Moore to be injured and Jon Broadwater to be killed.

    During the trial, the appellant was able to cross-examine every witness who implicated him in the burglary of the Moore trailer in order to reveal any facts that may have exonerated him. In addition, the appellant offered his own expert witness who testified about

proper crime scene procedure. The jury heard all the evidence and convicted the appellant of burglary and felony-murder due to the fact that a homicide occurred during the burglary.

. . .

Moreover, we find no merit to the appellant's contention that the Moore's trailer should have been detained for a longer period of time by the State. Given the specific facts of this case, the trailer was properly returned to the Moore family once the investigation was completed and all necessary evidentiary samples were collected and preserved. This is not a case where the preservation of a bloody shirt, a semen sample, or even a firearm is at issue. In this case, we are dealing with the dwelling house of people of obviously limited means where two families were living at the time of the brutal homicide. It is more than likely that these individuals simply would not have been able to rent a hotel for a year, two years, or for whatever length of time would have elapsed before the appellant's trial and all of his subsequent appeals were exhausted. We cannot imagine many families who are able to afford to buy a new home at the spur of the moment. The Moores needed to get back to their home and pick up the pieces of their lives after this brutal murder and it simply would not have been reasonable to have excluded them from their home indefinitely nor is that the law of this State. It is clear to us that even when the State has a duty to preserve evidence, that duty normally does not result in the need to preserve such evidence for an indefinite and unreasonable period of time.

You simply cannot exclude a victim from his or her home forever. . . . We are dealing with people's livelihoods and we must always approach situations like the one at hand with common sense and reasonableness. We cannot allow for a governmental bureaucracy to allow innocent victims to continue to be victimized. We do, however, recognize that some crime scenes must be preserved for lengthy periods of time based upon the specific circumstances of a particular crime and the ability to adequately preserve a specific piece of evidence. This is not such a case. As we have discussed, the investigators conducted a full and complete investigation and preserved the necessary evidence in numerous ways including photographs. Upon completing their investigation there simply was no reason to further exclude these victims from returning to their home.

In summary, upon careful review of the record, we find no evidence to conclude that the State withheld or destroyed any exculpatory evidence from the defense. The evidence of the burglary

> was provided by eyewitness testimony at trial that the appellant broke into the trailer. Additional evidence was provided by Ms. Ahouse's call to 911 for help . . . It is clear to us that the primary evidence in this case was eyewitness testimony. The prosecution did not rely on physical evidence at the scene that was lost or was needed by the appellant to reproduce tests. Likewise, there was no missing exculpatory evidence and the State did not fall to photograph the crime scene. In fact, the State gave the appellant approximately 100 photographs of the crime scene. We see no evidence or indication that any exculpatory evidence was withheld or destroyed by the State. It is for these reasons we find that the appellant's conviction should be affirmed.

State v. Lanham, 639 S.E.2d at 805-806, 807-808.

Upon an independent review of the record, the undersigned finds that the state court's adjudication of the petitioner's claim was not contrary to clearly established federal law. Indeed, the State Court denied the petitioner's claim based on a lesser standard than that required under federal law. Unlike the required showing of bad-faith necessary to state a federal constitutional claim, the State of West Virginia, in Thomas and Osakalumi, supra, only requires a showing of negligence to establish a due process violation under the West Virginia Constitution. If the petitioner cannot meet the burden required under State law, he certainly cannot meet the more stringent burden under federal law.

With that in mind, the undersigned does not believe that the state court's adjudication of the petitioner's claim involved an unreasonable application of clearly established State law. Thus, the State's adjudication of the petitioner's claim cannot violate clearly established federal law. Moreover, in light of the facts present in state court, the state court's findings do not result in a decision that is based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The evidence simply does not show that the State failed to preserve exculpatory evidence, or that the State destroyed exculpatory evidence. Instead, the state

court record clearly shows that the State's case against the petitioner was based largely on eyewitness testimony, not scientific evidence collected at the scene. See Resp't Ex. 15 (Trial Transcripts). Also, as noted by the WVSCA, this was not a case where the indefinite seizure of the crime scene was necessary, or outweighed the victims right to return to their home. Accordingly, the petitioner has failed to rebut, by clear and convincing evidence, the presumption that the factual determinations made by a state court were correct. Thus, the petition is due to be dismissed with prejudice.

## IV. Recommendation

For the reasons set forth in this Opinion, it is recommended that the respondent's Motion for Summary Judgment (dckt. 7) be **GRANTED** and the petitioner's § 2254 petition be **DENIED** and **DISMISSED WITH PREJUDICE**.

Within ten (10) days after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Opinion/Report and Recommendation to counsel of record via electronic means.

DATED: June 23, 2008.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE